IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, ) | CR. NO. 3:02-548 (CMC) |
| ) | |
| v.  ) | **OPINION and ORDER** |
| ) | |
| Randy Lindial Quattlebaum, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on Defendant's *pro se* motion for relief pursuant to 28 U.S.C. § 2255. For the reasons stated below, the court stays entry of judgment for a period of thirty-four (34) days to give Defendant an opportunity to address issues raised by the court.

**BACKGROUND**

In early 2003, Defendant was indicted for his involvement in an illegal drug distribution conspiracy. Defendant entered into a plea agreement with the Government on February 27, 2003, and agreed to plead guilty to the lesser-included offense contained in Count One of the Third Superseding Indictment. Specifically, Defendant agreed to plead guilty to conspiracy to possess with intent to distribute 500 grams or more but less than 3.5 kilograms of powder cocaine. The plea agreement did not contain a waiver of Defendant's right to file a direct appeal, nor did it contain any stipulations.

On February 27, 2003, Defendant appeared before this court and in a thorough proceeding conducted in compliance with Federal Rule of Criminal Procedure 11, admitted involvement in the offense, indicated his satisfaction with the advice and actions of his counsel, and agreed to have his sentence determined under the then-mandatory Federal Sentencing Guidelines.

On June 16, 2004, Defendant appeared for sentencing. Defendant had filed objections to the Presentence Report (PSR) but withdrew those objections at sentencing. *See generally*, Tr. of

Sentencing Hrg. (hereinafter "Sen. Tr."), Dkt. # 2020 (filed Sept. 20, 2004). Defendant was sentenced to 168 months' imprisonment, four years' supervised release, and a $100 special assessment. Prior to sentencing, on March 28, 2003, Defendant had filed a premature *pro se* Notice of Appeal to the Fourth Circuit Court of Appeals, which was thereafter treated as having been filed on the date of sentencing, June 16, 2004. Fed. R. App. P. 4(b)(2).

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004). On January 12, 2005, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). On June 27, 2008, this court granted Defendant's motion for reduction of sentence under 18 U.S.C. § 3582(c)(2), and reduced Defendant's sentence to 135 months' imprisonment. *See* Dkt. # 2590 (June 27, 2008).

Defendant's conviction and sentence were affirmed by unpublished opinion. *See United States v. Randy Lindial Quattlebaum*, 192 Fed. Appx. 245 (4th Cir. 2006). The current § 2255 motion was timely filed September 4, 2008.[1] The motion raises four grounds for relief, all relating to alleged ineffective assistance of appellate counsel. The Government has taken the position that the motion should, in the interest of justice, be granted as to Ground One (Defendant's contention regarding counsel's failure to assert a *Booker* argument on appeal).[2] The Government also argues,

---

[1] Defendant filed a petition for writ of certiorari to the United States Supreme Court which was denied October 1, 2007. *See Quattlebaum v. United States*, 128 S. Ct. 173 (U.S., Oct. 1, 2007). This § 2255 motion was filed within one year of that denial; it was, therefore, timely filed.

[2] The Government contends that the appropriate relief would be the opportunity to file a new notice of appeal raising *Booker*.

however, that Defendant's motion should be denied as to Ground Four (alleged ineffectiveness regarding a failure to appeal the enhancement Defendant received relating to his use of a firearm).[3]

**STANDARD**

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI. Such assistance must be effective. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, Defendant must show (1) that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. The question whether counsel's performance was deficient may only be answered by viewing counsel's actions or decisions in the light of all surrounding circumstances at the time the decision was made, not in the artificial light

---

[3]Grounds Two and Three are subsumed by Defendant's arguments in Ground One. Ground Two asserts that Defendant received ineffective assistance of counsel due to counsel's failure to raise *Booker* on appeal, and Ground Three asserts that counsel was ineffective in failing to file Defendant's appeal "as requested." Mot. at 7. Because Grounds Two and Three are contained in the arguments and relief requested as to Ground One, the court considers them together as one ground for relief.

of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993). A reviewing court should not second-guess defense counsel's tactical decisions. *See McDougall v. Dixon*, 921 F.2d 518, 537-39 (4th Cir. 1990), *cert. denied*, 501 U.S. 1223 (1991).

The second prong of the *Strickland* test requires that Defendant also establish prejudice. In certain cases, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissible for a lack of prejudice. *Strickland*, 466 U.S. at 697. In attempting to establish ineffective assistance of counsel, Defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as this court applies a "heavy measure of deference to counsel's judgments." *Id*. at 689-91.

A criminal defendant's right to effective assistance of counsel also extends to the direct appeal of a criminal conviction and requires the same showing of deficient performance and prejudice. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). Appellate counsel is accorded a "'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "Counsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *Id*. (quoting *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). "Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," and "counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims." *Id*. (alteration, citations, and internal quotation

marks omitted). In sum, while "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal, . . . it will be difficult to demonstrate that counsel was incompetent." *Id*. (internal quotation marks and alteration omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*. (internal quotation marks omitted).

When a defendant alleges his appellate counsel failed to include an issue on direct appeal, the merits of the omitted issue must first be evaluated. *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). Counsel concedes that Defendant requested a *Booker* argument be raised on appeal and that he did not include a *Booker* argument because "I did not think that [this] case helped . . . ." Aff. of Russell W. Templeton at 2 (Dkt. # 2933-2, filed Nov. 24, 2008). The court assumes for purposes of this order that failure to include a *Booker* argument was ineffective assistance of counsel.

However, Defendant must also show that failure to include a *Booker* argument prejudiced him. To succeed in such a showing, Defendant must demonstrate that had counsel included a *Booker* argument on appeal, the court of appeals would have found plain error and remanded Defendant's case to this court for resentencing.

Defendant did not raise *Apprendi v. New Jersey*, 530 U.S. 466 (2000), at sentencing.[4] Therefore, had Defendant's counsel raised *Booker* on appeal, the court of appeals would have conducted a plain error analysis.

---

[4]The Supreme Court did not decide *Blakely v. Washington*, 542 U.S. 296 (2004) until June 24, 2004, *after* Defendant's sentencing.

5

**APPELLATE REVIEW – HARMLESS AND PLAIN ERROR**

"In a criminal appeal, the appropriate standard of review generally depends upon whether an appellant has properly preserved a claim of error by asserting a timely objection in the court below-that is, whether the error was 'brought to the [district] court's attention.'" *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006) (quoting Fed.R.Crim.P. 52(b)). If a defendant notes a timely objection at sentencing, his assertion of error is deemed preserved, and the appellate court applies the "harmless error" standard provided by Federal Rule of Criminal Procedure 52(a). *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under the harmless error standard of review, "[a]ny error . . . that does not affect substantial rights must be disregarded." Fed.R.Crim.P. 52(a). If an appellant fails to object in the district court to an alleged error, the appellate court applies the "plain error" standard of appellate review set forth in Rule 52(b). *See Olano*, 507 U.S. at 731. The plain error standard allows a court of appeals to correct (1) an error, (2) that is plain, and (3) that affects a defendant's substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id*. at 732; *United States v. Rodriguez*, 433 F.3d 411, 414-15 (4th Cir. 2006). Additionally, "[i]f the defendant makes this three-part showing, correction of the error nevertheless remains within [ ] [the] discretion [of the appellate court], which [it] should not exercise unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hadden*, 475 F.3d 652, 670 (4th Cir. 2007).

Subsections (a) and (b) of Rule 52 contemplate the same inquiry into an error's effect on substantial rights; however, on plain error review the defendant bears a heavy burden of persuasion

with respect to prejudice. *See Rodriguez*, 433 F.3d at 416. On the other hand, harmless error review requires the Government to establish beyond a reasonable doubt that error was harmless. *See id.*

A defendant sentenced prior to *Booker* properly preserved a claim of *Booker* error if he "plainly notified the court of his position that he was being sentenced illegally, and he identified the line of Supreme Court precedent" upon which he relied. *Rodriguez*, 433 F.3d at 416 (recognizing that claim of statutory Booker error was preserved by raising timely *Blakely* objection at sentencing). Here, Defendant's objections at his sentencing proceeding were factual in nature. Defendant did not raise *Apprendi* objections to either the conversion of the powder to its "crack" equivalent or to this court's imposition of an enhancement based upon his use of a gun during the course of the offense. Therefore, appellate review of Defendant's claimed *Booker* error would be for plain error.

### STATUTORY AND SIXTH AMENDMENT *BOOKER* ERROR

Next, the court must determine the scope of the *Booker* error. In his motion, Defendant contends that this court's *Booker* error was "one of Sixth Amendment violations addressed in *Booker / Hughes* and is relevant to me because I was sentenced under the then mandatory guidelines." Mot. at 4 (Dkt. # 1, filed Sept. 4, 2008). Defendant makes both arguments throughout his § 2255 motion. Therefore, the court examines the alleged *Booker* error committed at sentencing to determine whether it was an error which contravened the dictates of the Sixth Amendment or whether it was "statutory" in nature.

#### A. SIXTH AMENDMENT

"[T]he Sixth Amendment is violated when a district court, acting pursuant to the Sentencing Reform Act and the guidelines, imposes a sentence greater than the maximum authorized by the

7

facts" admitted by Defendant.  *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  This is so because "enhancing sentences based on facts found by the court alone and not [admitted by the Defendant] violate[s] the Sixth Amendment imperative that '[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'"  *Id.* (quoting *Booker*, 543 U.S. at 244).

To show Sixth Amendment error, Defendant must show that in applying the mandatory guideline scheme, this court imposed a sentence "exceeding the maximum allowed based only on the facts" admitted by Defendant.  *Hughes*, 401 F.3d at 547.

A reviewing court would then consider whether this court's error was "plain."  An error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal."  *Johnson v. United States*, 520 U.S. 461, 468 (1997).  Third, Defendant must show that the error affected his substantial rights.  A reviewing court would consider "what effect the error had or reasonably may be taken to have had upon" the outcome of the proceedings.  *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).  Therefore, the question is whether Defendant has established that the sentence imposed by this court as a result of the alleged Sixth Amendment error "was longer than that to which he would otherwise be subject."  *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (en banc).  The final part of the analysis turns on whether the appellate court would have exercised its discretion to reverse and remand for resentencing.

A defendant's failure to object to the facts set forth in the PSR does not amount to an admission for Sixth Amendment purposes.  However, "Sixth Amendment protections can be bypassed [ ] [i]f the defendant . . . admits the fact otherwise committed to the jury."  *United States*

8

*v. Milam*, 443 F.3d 382, 387 (4th Cir. 2006). An admission of fact must be "of sufficient clarity and kind to justify taking the fact from the jury." *Id*. Admissions fall along a spectrum from silence to "statements such as 'I admit,' or the functional equivalent thereof." *United States v. Revels*, 455 F.3d 448, 450 (4th Cir. 2006).

Whether this court committed Sixth Amendment error hinges on Defendant's withdrawal of his objections at sentencing. As they raise slightly different issues, the court addresses them separately.

### A.1. CONVERSION OF POWDER TO "CRACK" COCAINE

Defendant acknowledged at least twice that he withdrew his objection to the conversion of powder cocaine to "crack" for sentencing purposes. *See* Sen. Tr. at 19, 24. Ultimately, at sentencing, this court inquired of Defendant:

> [Court]: In other words, you are admitting that you are responsible for this amount of drugs and this conversion of drugs at this point?
>
> [Defendant]: Yes, m'am.

Sen. Tr. at 24.

Viewing the circumstances "as a whole," *Revels*, 455 F.3d at 450, Defendant's withdrawal of this objection operates to foreclose his argument regarding alleged Sixth Amendment error on this issue.

### A.2. ENHANCEMENT FOR POSSESSION OF WEAPON

Defendant's withdrawal of the objection to the firearms enhancement is a closer question. The PSR applied a two-point enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. At sentencing, Defendant's counsel indicated that Defendant wanted to argue his "legal" objection to this enhancement, as Defendant contended that his possession of the firearm

9

in question was not related to the drug offense. Sen. Tr. at 15. Several breaks were taken during the course of the sentencing hearing to allow Defendant an opportunity to review transcripts, to listen to a tape recording of a conversation relating to one of the firearms in question, and to allow him additional time to discuss the issue with counsel. *See* Sen. Tr. at 12, 15, 18. Thereafter, the following colloquy occurred:

> [Court]: All right, now, on the firearm issue, as I understand it, the objection that was filed was objection number 4 to paragraph 43, which was that you admitted that law enforcement officers seized firearms from your residence on July the 31st of 2002, but you deny that they were used in relation to drug trafficking activities. And that's the question, as to whether you want to still have me rule on whether or not the government can prove by a preponderance of the evidence that firearms were used – in relation to drug trafficking activity under the Fourth Circuit law. Do you understand that that is what is at issue now?
>
> [Defendant]: Yes, ma'am. . . .
>
> [Government]: Your Honor, while they are discussing the firearm issue, we made it clear to Mr. Templeton that we believe the firearm issue is not just a legal issue, we believe it's a mixed question of facts and law in light of the transcript on which we were relying. And [the case agent] . . . went over the other evidence that was introduced at trial [of codefendants] and the other clips that we used to piece that together, and have [sic] explained that to Mr. Quattlebaum that we would intend to introduce that on a weapon enhancement issue. So, it's a factual issue as well, and I think that's why he's considering withdrawing it.
>
> ∗∗∗
>
> [Court]: Well, it's time to make a decision.
>
> [Government]: Your Honor, while he's considering it, I just want to read in the commentary to the guideline it says, "The adjustment should be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense," and it goes on the describe hunting rifles. There was a pistol, there's a military vest, there's ammunition that was seized from this residence.
>
> [Defense Counsel]: We are not denying that guns were seized from his residence, Your Honor, and that has never been a contention of ours. The contention was, there is no evidence that we had, that we saw, that those guns in the residence were ever used in a [sic] drug trafficking activity. Now, where that comes into play is the

10

>conversation where Mr. Quattlebaum called [a cooperating codefendant] from the Karaoke Club, and he did say that, "I checked my glove box and there is a gun in it," and I really don't deny that. That's that.
>
>[Court]: He didn't say a gun, he said, "my pistol."
>
>[Defense Counsel]: "My pistol," okay. But you know – and there they are trying to convince – what he's mulling over is, they are trying to bring in other things to say, in addition to that, that this was a drug transaction because somebody owed [the cooperating codefendant] some money or stole cocaine from [the cooperating codefendant].
>
>[Government]: What we have explained to Mr. Templeton are the facts that predate the call to put it in context, as we would be required to do. I would also point out that the pistol [seized from the residence] is a Taurus 9 millimeter pistol, the other rifle is a a Norinco SKS semi-automatic. That's not a hunting rifle.
>
>[Defense Counsel]: I understand that, I don't deny that at all.
>
>**[Defendant]: We withdraw the objections.**
>
>[Court]: I'm sorry, sir?
>
>**[Defendant]: I say we will withdraw the objections.**
>
>[Court]: The objection to the firearm enhancement?
>
>[Defendant]: Yes, ma'am.

Sen. Tr. at 22-23 (emphasis added). Later, Defendant again acknowledged he was withdrawing this objection:

>[Court]: Okay. And then objection number 4 is the one about the firearms and you are withdrawing that; is that correct?
>
>[Defendant]: Yes, m'am.

Sen Tr. at 24.

Based upon an analysis of the circumstances "as a whole," Defendant's withdrawal of this objection operated as a waiver of his Sixth Amendment rights with respect to this enhancement. Defendant initially lodged an objection. He was then given several opportunities by this court

11

during the proceedings to review the relevant evidence that would be presented by the Government in support of its position. In the midst of his attorney's attempt to argue the objection, however, Defendant voluntarily chose to withdraw the objection, Sen. Tr. at 23, and affirmed his withdrawal of the objection upon specific question by this court, Sen. Tr. at 24. Accordingly, there was not Sixth Amendment error committed at sentencing. *Cf. United States v. Montgomery*, 190 Fed. Appx. 327 (4th Cir. 2006). Defendant's withdrawal of this objection operates to foreclose his argument regarding alleged Sixth Amendment error on this issue.

Therefore, in the overall analysis of counsel's actions in the *Strickland* framework, Defendant cannot show that his attorney's failure to raise a Sixth Amendment *Booker* error on appeal prejudiced him, and he therefore is not entitled to relief based upon this argument.

### B. STATUTORY

Aside from the Sixth Amendment *Booker* error outlined above, "the imposition of a sentence under the former mandatory guidelines regime rather than under the advisory regime outlined in *Booker* is error." *United States v. White*, 405 F.3d 208, 216-17 (4th Cir. 2005). To show that this court committed "statutory" *Booker* error, Defendant must show that this court sentenced Defendant under the mandatory scheme.

At sentencing, Defendant did not raise an objection to the mandatory nature of the Guidelines. Therefore, an appellate court would apply the "plain error" standard of appellate review set forth in Rule 52(b).[5]

---

[5] See discussion of plain versus harmless error review, *supra*, at pages 6-7.

To be sure, when Defendant was sentenced under the then-mandatory Guidelines, this court committed what is known as "statutory" *Booker* error. Additionally, for purposes of the plain error analysis, the error was plain. *Id*. at 217.

Third, Defendant must show that the error "affect[ed] [his] substantial rights." *Olano*, 507 U.S. at 732. "[I]n most cases [this] means that the error must have been prejudicial: It must have affected the outcome of the proceedings." *Id*. at 734; *accord United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998). Therefore, in most cases "the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." *Olano*, 507 U.S. at 735. The Fourth Circuit has held that the error "of sentencing a defendant under a mandatory guidelines regime is neither presumptively prejudicial nor structural," *White*, 405 F.3d at 223; therefore, Defendant "must show that the error of sentencing him under the mandatory guidelines regime 'affected the outcome of the district court proceedings.'" *Id*. (*quoting Olano*, 507 U.S. at 734).

The record "as a whole provides no nonspeculative basis for concluding that the treatment of the guidelines as mandatory 'affect[ed] the district court's selection of the sentence imposed.'" *Id*. (*quoting Williams v. United States*, 503 U.S. 193, 203 (1992)). This court made no statements at sentencing that it wished to sentence Defendant to a sentence below the guidelines range but that the guidelines prevented it from doing so. Because Defendant cannot demonstrate that he suffered actual prejudice from being sentenced under a mandatory regime, this error did not affect his substantial rights.

Therefore, in evaluating his attorney's failure to include this *Booker* error in Defendant's direct appeal, Defendant cannot show that counsel's failure prejudiced him. He is, accordingly, not entitled to relief based upon this argument.

13

**CONCLUSION**

Defendant cannot show that counsel's failure to include *Booker* arguments in his direct appeal prejudiced him. Therefore, he is not entitled to relief on Grounds One, Two or Three of his motion. Furthermore, as demonstrated above, his admission at sentencing forecloses his fourth ground for relief.

The Government has taken the position in its responses to Defendant's motion that it does not oppose granting limited relief to Defendant, as the appellate court "could have found reversible error had [*Booker*] been raised on appeal." Addendum to Gov't Resp. at 5 (filed Jan. 16, 2009). However, to prevail on the prejudice prong of *Strickland*, Defendant must be able to meet the elements of the plain error analysis relating to either his Sixth Amendment or "statutory" *Booker* error arguments. As shown by the above analysis, this he cannot do. However, Defendant has not had adequate opportunity to address the points raised by this court, and this court is reluctant to enter judgment without providing him an opportunity to do so. Therefore, the court shall delay entry of judgment in this matter for a period of thirty-four (34) days to give Defendant an opportunity to address the points raised by this court. The court will then either enter judgment for the Government or modify this order based upon Defendant's arguments. If Defendant provides material to this court within the thirty-four day period, the material should comply with the requirements of Federal Rules of Civil Procedure 12 and 56. Therefore, the Clerk shall send Defendant such explanations as normally accompany an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 30, 2009

C:\Documents and Settings\baw58\Local Settings\Temp\notesE1EF34\02-548 Randy Quattlebaum deny petition iac booker plain error review fails.wpd